FILED

2022 Feb-16  AM 09:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BRANDI KING, as Personal Representative of the Estate of Delilah Sue McKee,** | } } } } | |
| **Plaintiff,** | } } | **Case No.:  2:21-cv-01568-ACA** |
| **v.** | } } | |
| **MARK N. MOON, et al.,** | } } } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

Ricky King and Delilah Sue McKee were married for thirty-one years.  Mr. King emotionally and physically abused Ms. McKee throughout their marriage.  Mr. King's threatening behavior escalated in the fall of 2019.  Sheriff's deputies arrested Mr. King after he violated the terms of a restraining order.  Although a court ordered that Mr. King be held without bond until a hearing, the local sheriff and a sergeant released Mr. King from jail.  One day later, Mr. King shot and killed Ms. McKee and then killed himself.

Brandi King, Ms. McKee's daughter and representative of her estate, filed this lawsuit against Blount County Sheriff Mark Moon, Blount County Deputies Joshua Southwell and Michael Hicks, and Blount County Sergeant Anthony Economes.

(Doc. 1).   Ms. King asserts: (1) a federal claim for violations of Ms. McKee's Fourteenth Amendment equal protection rights against all Defendants ("Count One"); (2) a federal claim for violations of Ms. McKee's Fourteenth Amendment substantive due process rights against Sheriff Moon and Sergeant Economes ("Count Two"); and (3) a state law claim for wrongful death against all Defendants ("Count Three").  (Doc. 1 at 20–30).  Ms. King seeks damages against all Defendants in their individual capacities.  (*Id.* at 30).

Currently before the court is Defendants' motion to dismiss Ms. King's wrongful death claim.  (Doc. 7).  The Defendants argue that Ms. King's wrongful death claim is barred by state immunity under Article I, § 14 of the Alabama Constitution.  (*Id.*; *see also* doc. 8).  Ms. King responds immunity does not apply because the Defendants were acting outside the line and scope of their employment, and alternatively, because some of the Defendants' actions are subject to an exception to state immunity.  (Doc. 12).

The court **WILL GRANT IN PART** and **WILL DENY IN PART** the motion to dismiss.  The court **WILL GRANT** the motion to the extent it seeks dismissal of the wrongful death claim against Deputy Southwell and Deputy Hicks because these defendants were acting in the line and scope of their employment at the time of the events alleged in the complaint and Ms. King has not argued that any exception to immunity applies to their conduct.  The court **WILL DENY** the motion

to the extent it seeks dismissal of the wrongful death claim against Sheriff Moon and Sergeant Economes. These defendants were acting in the line and scope of their employment at the time of the events alleged in the complaint. But because the exception to state immunity upon which Ms. King relies is recognized in the context of claims against sheriffs and deputies, and because the Defendants have not made any other argument in support of dismissal, the wrongful death claim against Sheriff Moon and Sergeant Economes will proceed.

## I.    BACKGROUND

Defendants move to dismiss Ms. King's wrongful death claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. (Doc. 8). The Alabama Supreme Court has explained that absolute immunity under the Alabama Constitution "is a jurisdictional bar that deprives a court of subject-matter jurisdiction." *Ex parte Wilcox Cnty. Bd. of Educ.*, 279 So. 3d 1135, 1140 (Ala. 2018). Accordingly, Federal Rule of Civil Procedure 12(b)(1) is the appropriate standard under which to analyze entitlement to absolute immunity.

Defendants assert a facial attack under Rule 12(b)(1) (*see* doc. 8 at 3), which requires the court to accept the allegations in the complaint as true and determine whether those allegations sufficiently allege a basis for subject matter jurisdiction. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335–1336 (11th Cir. 2013).

The complaint alleges that Ricky King abused Delilah Sue McKee during their thirty-one year marriage. (Doc. 1 at ¶ 20). In late September 2019, Ms. McKee called Deputy Southwell to report Mr. King's past abuse and to inform him that Mr. King had recently removed her from the couple's joint checking account and instructed the cell phone company to disconnect her phone. (*Id.* at ¶¶ 23–24).

The following day, Ms. McKee attempted to return to the couple's home, but she and her children could not enter because Mr. King had blocked the driveway. (*Id.* at ¶ 25). Mr. King called the Blount County Sheriff's Office and requested that his adult son be arrested for trespassing. (Doc. 1 at ¶ 25). Deputy Southwell responded, but while at the couple's home, he did not investigate Ms. McKee's reports of Mr. King's abuse. (*Id.*).

The next day, Blount County deputies responded to the couple's home on two occasions. First, Ms. McKee's daughter called deputies to report that Mr. King was removing furniture, the television, lawn care tools, computers, laptops, and bookcases. (*Id.* at ¶ 26). The sheriff's deputies told Ms. McKee's daughter they could not do anything because the property was in Mr. King's name. (*Id.*). The deputies did not investigate further or learn that Mr. King entered the house by breaking through a basement door. (*Id.*). Mr. King returned to house later that day and attempted to take the washer and dryer, the stand-up freezer, and a table. (Doc. 1 at ¶ 27). Mr. King called the Blount County Sheriff's Office, and a Deputy Horton

(who is not a party to this lawsuit) responded. (*Id.*). Deputy Horton told Mr. King that he had taken enough property and needed to leave the home. (*Id.*). Deputy Horton told Mr. King and Ms. McKee that his supervisors told him to tell the couple that they needed to settle their dispute in divorce court. (Doc. 1 at ¶ 27). Deputy Horton also told Ms. McKee that the Sheriff's Office could not help her. (*Id.*).

The following day, October 1, 2019, Mr. King filed for divorce from Ms. McKee. (*Id.* at ¶ 28). Three days later, Ms. McKee filed a petition for protection from abuse. (Doc. 1 at ¶ 30). The court entered the protection order and set a hearing for October 10, 2019. (*Id.* at ¶ 31). The court then set aside the protection order and entered a mutual restraining order. (*Id.* at ¶ 34). The Blount County Sheriff's Office received notification of the restraining order. (Doc. 1 at ¶ 35).

Despite entry of the restraining order, Mr. King began to track Ms. McKee's location. (*Id.*). Around that same time, he also applied to the Blount County Sheriff's Office to renew his pistol permit. (*Id.* at ¶ 36). The Blount County Sheriff's Office denied the application and told Mr. King he needed court approval for the permit. (Doc. 1 at ¶ 36). Still, no one at the Sheriff's Office investigated Ms. McKee's claims of abuse. (*Id.*).

Over the next several weeks, Mr. King followed Ms. McKee to a local bar and a doctor's appointment; he stole her car and forced her to ride with him to pick up

the car from his house; and he threatened to have Ms. McKee arrested.   (Doc. 1 at ¶¶ 39–41).

Ms. McKee then moved for the court to hold Mr. King in contempt of the restraining order.  (*Id.* at ¶ 42).  The complaint does not indicate whether the court ruled on Ms. McKee's motion.  During a later hearing concerning Mr. King's request for court approval for a pistol permit, the court informed Mr. King that it would grant Mr. King's motion, but instructed Mr. King to stay away from Ms. McKee.  (*Id.* at ¶ 43).  During that hearing Ms. McKee sought another protection order.  (Doc. 1 at ¶ 43).

Later that evening, Mr. King broke into Ms. McKee's house through the basement door, carrying with him a rifle and a handgun.  (*Id.* at ¶ 44).  He hit Ms. McKee with the rifle and then put the rifle to her throat, pushed her to the ground, and held her there.  (Doc. 1 at ¶ 44).  Ms. McKee's sister was on the phone with her when the attack took place, and she called the Blount County Sheriff's Office for help.  (*Id.* at ¶ 46).

The dispatcher told Deputy Hicks that Mr. King was at Ms. McKee's house in violation of a no contact order and that he had multiple guns.  (*Id.* at ¶ 47).  Deputy Hicks went to the house, arrested Mr. King, and took the rifle into custody.  (*Id.* at ¶¶ 50–51).  Deputy Hicks left the handgun with Ms. McKee because she "had received instruction that she would need it to protect herself when [Mr. King] came

back." (Doc. 1 at ¶ 52). Deputy Hicks took Mr. King to the Blount County Correctional Facility and charged him with third degree domestic violence, a misdemeanor. (*Id.* at ¶¶ 59–60). Deputy Hicks falsely stated in his incident report that Mr. King did not enter the home using force and that Deputy Hicks did not include in the incident report Ms. McKee's complaint that Mr. King assaulted and injured Ms. McKee. (*Id.* at ¶¶ 54–55).

The next day, the court denied Mr. King's motion to issue a pistol permit and charged Mr. King with violating the mutual restraining order. (Doc. 1 at ¶ 61). The court ordered Mr. King held without bond until a November 26, 2019 hearing. (*Id.*). That same day, Ms. McKee's sister called Deputy Southwell to let him know that Deputy Hicks' incident report did not include information that Mr. King had threatened to kill Ms. McKee or that Ms. McKee suffered injuries from Mr. King's assault. (*Id.* at ¶ 62). Ms. McKee's sister called Deputy Southwell a second time, again expressing concern about Ms. McKee's safety, but Deputy Southwell ignored Ms. McKee's claims. (Doc. 1 at ¶ 69). Ms. McKee also called the Sheriff's Office that day, but Deputy Hicks did not question Ms. McKee further. (*Id.* at ¶ 66). Had Deputy Hicks investigated Ms. McKee's allegations, he could have charged Mr. King with additional crimes that carry a higher bond than the misdemeanor domestic violence charge, making less likely that Mr. King could post bail. (*Id.* at ¶¶ 67–68).

Three days after Mr. King's arrest, Sheriff Moon and Sergeant Economes released Mr. King on a $2,500 bond despite the court's no bond order and despite a notification on the Sheriff's Office website that Mr. King was to be held without bond. (Doc. 1 at ¶¶ 63, 72). Ms. McKee's sister called a deputy, who she believes to be Deputy Southwell, and questioned why Mr. King had been released and expressed concern that Mr. King would kill Ms. McKee. (*Id.* at ¶¶ 77–78). Ms. McKee's sister asked Deputy Southwell to place a deputy at a gas station near Ms. McKee's home and watch for Mr. King, who drove a distinct antique car. (*Id.* at ¶ 78). Deputy Southwell told Ms. McKee's sister that if the Sheriff's Department saw Mr. King, a deputy would pick him up. (*Id.*).

One day after his release, Mr. King found Ms. McKee at her house. (*Id.* at ¶ 80). He forced open the door, chased Ms. McKee down the hallway, and shot and killed her. (Doc. 1 at ¶ 80). Mr. King then killed himself. (*Id.*).

## II.  DISCUSSION

In Count Three of her complaint, Ms. King asserts a wrongful death claim under Alabama law against all Defendants. (Doc. 1 at ¶¶ 122–137). Ms. King alleges that the Defendants caused Ms. McKee's death by failing to protect her from Mr. King's criminal acts. (*Id.* at ¶ 123). The Defendants argue that the wrongful death claim is barred by state immunity.

The Alabama Constitution provides that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. art. 1, § 14. Under § 14 of the Alabama Constitution, Alabama sheriffs and their deputies are executive officers of the State, and they enjoy state immunity from "claims for monetary damages stemming from activities performed while working in the line and scope of his or her employment," subject to certain exceptions. *Ex parte Purvis,* 689 So.2d 794, 796 (Ala. 1996).

Ms. King first argues that state immunity does not apply because the Defendants were not executing their duties as sheriff and deputies when they released Mr. King in violation of the court's no bond order. (Doc. 12 at 11–12). As an initial matter, Ms. King does not distinguish among the conduct of the Defendants, and only two of the Defendants—Sheriff Moon and Sergeant Economes—are alleged to have released Mr. King from jail. (*See* Doc. 1 at ¶¶ 72, 75). However, based on the facts contained in the complaint, all Defendants were acting in the line and scope of their employment at the time of the alleged misconduct.

In her complaint, Ms. King alleges that Deputies Southwell and Hicks did not sufficiently investigate Ms. McKee's complaints about Mr. King and that they could have charged him with additional crimes that would have increased Mr. King's minimum bond and made it less likely that he would have been released from jail.

(Doc. 1 at ¶¶ 24–25, 48–60, 64, 66–69).   In essence, Ms. King claims that Deputies Southwell and Hicks did not properly carry out their job duties.   There is no allegation in the complaint that suggests Deputies Southwell's and Hicks' actions were taken outside of the performance of their duties as deputy sheriffs.   And Ms. King makes no argument to the contrary. (*See generally* doc. 12 at 11–12).   In fact, in the section of her brief in which she argues that the Defendants were not executing duties of their office, Ms. King references only Mr. King's release from jail, and neither Deputy Southwell nor Deputy Hicks was involved in Mr. King's release. (*See* doc. 1 at ¶¶ 72, 75; doc. 12 at 11–12).

In her complaint, Ms. King alleges that Sheriff Moon and Sergeant Economes released Mr. King from jail, despite the court's no bond order.   (Doc. 1 at ¶ 72). Ms. King argues that "[t]he Defendants were not executing their duties as sheriff and deputies when they released [Mr. King] as they did not have a duty to release him in violation of the state court's order."   (Doc. 12 at 12).   But the Alabama Supreme Court's decision in *Hereford v. Jefferson Cnty.*, 586 So. 2d 209 (1991) forecloses Ms. King's position.   In *Hereford*, a plaintiff sued a sheriff and four deputies for negligence and wantonness, claiming they wrongfully released an inmate who was serving a life sentence without the possibility of parole. *Hereford*, 586 So. 2d at 209.   The Alabama Supreme Court affirmed the trial court's decision that the sheriff and the deputies were immune from the claims. *Id.* at 210–211.

Like the plaintiff in *Hereford*, Ms. King claims that Sheriff Moon and Sergeant Economes released an inmate who should have remained in custody, and that the improper release caused harm. (Doc. 1 at ¶ 72). The complaint contains no allegation suggesting that Sheriff Moon and Sergeant Economes were not acting in their capacities as sheriff and deputy when they released Mr. King in violation of the no bond order. Even if, as Mr. King contends, Sheriff Moon and Sergeant Economes had no duty to release Mr. King (doc. 12 at 12), the fact remains that as currently pleaded, the act of releasing Mr. King was performed in the line and scope of Sheriff Moon's and Sergeant Economes' employment. *See Hereford*, 586 So. 2d at 209–211.

At the pleading stage, the Defendants' alleged misconduct occurred while they were performing the functions of their jobs. Whether the Defendants executed those functions deficiently or in violation of a court order does not remove the Defendants' actions from the protection state immunity affords, so long as the Defendants were acting in the line and scope of their employment at the time of the alleged misconduct.

Ms. King next argues that her wrongful death claim is not barred because an exception to immunity applies. (Doc. 12 at 12). Historically, the Alabama Supreme Court has recognized five types of actions from which sheriffs and their deputies are not immune. Those exceptions include actions brought: "(1) to compel him to

11

perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him

from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith,

fraudulently, beyond his authority, or under mistaken interpretation of the law, or

(5) to seek construction of a statute under the Declaratory Judgment Act if he is a

necessary party for the construction of the statute." *Parker v. Amerson*, 519 So. 2d

442, 443 (Ala. 1987).

Ms. King does not argue that any of these five exceptions applies.  Rather, she

claims that a sixth exception to state immunity as articulated in *Ex parte Moulton*,

116 So. 2d 1119 (Ala. 2013), permits her wrongful death claim to proceed.  (Doc.

12 at 12–13).  Under this sixth exception, a plaintiff may assert a claim for damages

against state officials in their individual capacities "where it is alleged that they had

acted fraudulently, in bad faith, beyond their authority, or in a mistaken

interpretation of law, subject to the limitation that the action not be, in effect, one

against the State." *Ex parte Moulton*, 116 So. 3d at 1141.

The Defendants respond that this sixth exception is not available in the context

of claims against sheriffs and deputies.  (Doc. 13 at 3–6).  The Defendants correctly

note that both before and in the year following *Ex parte Moulton*, the Alabama

Supreme Court recognized only the first five exceptions to state immunity for

sheriffs and their deputies.  *See e.g., Pouiroux v. Rich*, 150 So. 3d 1027, 1038 (Ala.

2014) (stating that "[e]xceptions to State immunity for sheriffs (and their deputies)

that have been recognized" include the first five exceptions) (internal quotation marks omitted); *Ex parte Haralson*, 853 So. 2d 928, 932 (Ala. 2003) ("Under Art. I, § 14, Alabama Const.1901, the only exceptions to State immunity for State officers such as deputy sheriffs" are the first five exceptions); *Ex parte Purvis*, 689 So. 2d 794, 795 (Ala. 1996) (acknowledging the exception to state immunity for officers who act "willfully, maliciously, illegally, fraudulently, in bath faith, beyond his authority, or under a mistaken interpretation of the law" but finding that the exception did not apply because the case involved claims against a sheriff and deputy sheriff).

However, in 2020, the Alabama Supreme Court issued an opinion in which it considered whether the sixth exception applied to claims against a sheriff and deputies. *See Birmingham Broadcasting (WVTM-TV) LLC v. Hill*, 303 So. 3d 1148 (2020). Relevant to the court's analysis here, the trial court in *Birmingham Broadcasting* granted a motion to dismiss a plaintiff's state law claims against a sheriff, a deputy, and a lieutenant on the basis of state immunity. *Birmingham Broadcasting*, 303 So. 3d at 1153. On appeal, the plaintiff argued that his claims were not barred because the sheriff defendants' actions were subject to the sixth exception to state immunity as outlined in *Ex Parte Moulton*. *Id.* at 1159. The Alabama Supreme Court examined the sufficiency of the plaintiff's allegations and found that the plaintiff "failed to demonstrate that the sheriff defendants acted in bad

13

faith or in a mistaken interpretation of the law sufficient to exempt them the application of state immunity under § 14." *Id.* at 1160.   If the sixth exception were unavailable as a matter of law to claims against sheriffs and deputies, the court must presume the Alabama Supreme Court would have said as much and not analyzed whether the plaintiff had alleged facts entitling him to take advantage of the exception.   Based on *Birmingham Broadcasting*, the court finds that the Alabama Supreme Court recognizes the sixth exception to state immunity in the context of claims against a sheriff and deputies.

Turning then to Ms. King's specific argument in this case, again, without distinguishing among the Defendants, Ms. King argues that the "Defendants acted beyond their authority or in a mistaken interpretation of the law when they released [Mr. King] in violation of an order to hold him without bond." (Doc. 12 at 13).   But as noted above, the complaint contains no allegation that Deputies Southwell or Hicks was involved in Mr. King's release from jail; the complaint alleges specifically that Sheriff Moon and Sergeant Economes were responsible for Mr. King's release from jail.   (Doc. 1 at ¶¶ 72, 75).

The specific conduct at issue with respect to Deputies Southwell and Hicks is their alleged failure to properly investigate Ms. McKee's complaints and their failure to charge Mr. King with additional crimes.   (Doc. 1 at ¶¶ 24–25, 48–60, 64, 66–69). And Ms. King has neither argued nor shown that Deputies Southwell or Hicks acted

beyond their authority or in a mistaken interpretation of law when they engaged in that conduct. (*See generally* doc. 12 at 13). Therefore, she has not demonstrated that the sixth exception to state immunity applies to her wrongful death claim against Deputies Southwell or Hicks. Accordingly, the court **WILL GRANT** the motion to dismiss, to the extent it seeks dismissal of the wrongful death claim against Deputy Southwell and Deputy Hicks because these defendants are entitled to state immunity from the claim.

The analysis with respect to Sheriff Moon and Sergeant Economes is not as straightforward. In response to Ms. King's argument that Sheriff Moon and Sergeant Economes acted beyond their authority or in a mistaken interpretation of law, the Defendants claim only that this exception is not recognized in cases involving claims against sheriffs and deputies. (Doc. 13 at 1–6). But as explained above, that argument cannot be squared with *Birmingham Broadcasting*. Because the Defendants offer no substantive argument about why Sheriff Moon and Sergeant Economes did not act beyond their authority or in a mistaken interpretation of law, the court finds that they have not shown that they are entitled to state immunity from Ms. King's wrongful death claim.

The court emphasizes that this ruling does not mean that the complaint alleges facts showing that the sixth exception applies to Sheriff Moon's or Sergeant Economes' conduct, but merely that the Defendants' only argument in support of

dismissal—that the exception is not recognized—is not persuasive with respect to Sheriff Moon and Sergeant Economes.  Therefore, the court **WILL DENY** the motion to dismiss, to the extent it seeks dismissal of the wrongful death claim against Sheriff Moon and Sergeant Economes.

## III.   CONCLUSION

For the reasons stated above, the court **WILL GRANT IN PART** and **DENY IN PART** the Defendants' motion to dismiss.  (Doc.  7).

The court will enter a separate order consistent with the memorandum opinion **DISMISSING WITHOUT PREJUDICE** Ms. King's wrongful death claim against Deputy Southwell and Deputy Hicks for lack of subject matter jurisdiction because the claim against these defendants is barred by state immunity.

**DONE** and **ORDERED** this February 16, 2022.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE